# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

In re:

Case No. 23-10253(KBO)

Adv. Proc. No. 25-50247 (KBO),

AKORN HOLDING COMPANY LLC, et al., Jointly Administered Debtors.

---------------------------------------------------------------------------------

GEORGE L. MILLER, Chapter 7 Trustee of the estates of Akorn Holding Company LLC, et al.,

      Plaintiff,

v.

DELTA SYNTHETIC CO., LTD.

      Defendant.

---------------------------------------------------------------------------------

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT TO AVOID AND RECOVER PREFERENTIAL TRANSFERS

Defendant Delta Synthetic Co., Ltd. ("Delta") submits this Answer and Affirmative Defenses to the Complaint to Avoid and Recover Preferential Transfers (the "Complaint") filed by George L. Miller, the Chapter 7 Trustee (the "Trustee"). Delta denies any and all liability to the Trustee or the Debtors' estates and asserts that the transfers at issue are protected from avoidance pursuant to 11 U.S.C. § 547(c).

## CONSENT STATEMENT

In accordance with Federal Rule of Bankruptcy Procedure 7012(b), Defendant Delta Synthetic Co., Ltd. hereby expressly consents to the entry of final orders and judgment by the United States Bankruptcy Court in this adversary

proceeding and waives any objection based on Article III of the United States Constitution.

## I. FACTUAL BACKGROUND

1. For many years prior to the Petition Date, defendant supplied pharmaceutical raw materials to Akorn Holding Company LLC ("Akorn") and its affiliate, Hi-Tech Pharmacal, through a United States distributor.

2. In 2021, when the U.S. distributor ceased its distribution business, Akorn began placing purchase orders directly with defendant. Thereafter, Defendant and Akorn continued their commercial relationship under consistent terms and conditions.

3. From November 2021 through February 2023, Defendant supplied products directly to Akorn pursuant to written purchase orders issued by Akorn. The transactions were documented through purchase orders, invoices, packing lists, bills of lading, and bank remittance records. (See Exhibits 1 and 2.)

4. During the fifteen (15) months preceding February 23, 2023 (the "Petition Date"), Akorn placed a total of 10 purchase orders with defendant. (See Exhibit 1.)

5. Five purchase orders—PO 222547, 225009, 225021, 223128, and 223129—were placed within the ninety (90) days prior to the Petition Date (the "Preference Period"). The products ordered, quantities purchased, and unit pricing in these five purchase orders were materially consistent with those placed prior to the Preference Period. There were no changes in pricing structure, product type, or commercial terms that would indicate any preferential or unusual treatment.

6. In connection with the transactions occurring during the Preference Period, Defendant issued three invoices—DT22071201, DT22111601, and DT22112301—totaling $309,950.00. (See Exhibit 2.) Defendant also issued Credit Note No. CN-22001 in the amount of $34,884.28 for the

return of 857.371 kilograms of Lidocaine Base. (See Exhibit 3.) After applying the credit note to the outstanding invoice balances, the resulting payment from Akorn to Defendant was $275,065.72 (the "Transfer").

7. The Transfer represents the ordinary reconciliation and settlement of the above-referenced invoices and credit adjustment arising from the parties' routine commercial transactions. The credit amount reflected the return of product and was applied in the normal course of the parties' accounting practices to reduce the outstanding invoice balances.

8. Throughout the parties' relationship, Defendant's invoices provided for payment within thirty (30) days after receipt of goods (T/T 30 days). (See Exhibit 2.)

9. Akorn, however, maintained a consistent pattern of late payments both before and during the Preference Period. Specifically, during the Preference Period

   (1)  Invoice DT22112301 was paid nine (9) days past due;
   (2)  Invoices DT22071201 and DT22111601 were paid more than sixty (60) days past due.

10. This pattern was consistent with the parties' historical payment practices prior to the Preference Period. For example:

   (1)  Payment received on April 1, 2022 for invoices DT21102601 and DT21121101 was more than seventy (70) days past due;
   (2)  Payment received on June 24, 2022 for invoice DT22031601 was seventeen (17) days past due. (See Exhibit 4.)

11. In addition, email correspondence between January 18, 2023 and February 13, 2023 demonstrates that Defendant and Akorn continued to communicate regarding routine order and supply matters up to approximately ten (10) days before the Petition Date, reflecting the good-faith continuation of normal business operations (See Exhibit 5). At no time did Akorn inform Defendant, whether verbally or in writing, that it intended to commence bankruptcy proceedings.

12. Thus, the comprehensive transaction summary set forth in Exhibit 1—including purchase order numbers, product descriptions, quantities, pricing, shipment information, invoice details, payment dates, and days past due—further confirms that the Transfer was consistent with the parties' established course of dealing.

13. However, Defendant received a letter dated December 17, 2024 notifying Defendant that Akorn had commenced bankruptcy proceedings and asserting a claim to recover the Transfer allegedly paid to Defendant within the ninety (90) days preceding the Petition Date. The correspondence further proposed a discounted settlement at 85% of the demanded amount. (See Exhibit 6.)

14. On January 24, 2025, because all payments received from Akorn represented payment for goods sold and delivered in the ordinary course of business, Defendant retained counsel to respond to the demand.

15. Defendant, through counsel, responded to Plaintiff, stating that the payments within the Transfer at issue were made in connection with ordinary commercial transactions and were not avoidable preferences. (See Exhibit 7.)

16. Thereafter, on February 14, 2025, Defendant submitted a comprehensive written response further explaining the basis for each payment within the Transfer, including detailed shipment records, corresponding invoices, purchase orders, and relevant email communications documenting the procurement process. (See Exhibit 8.)

17. On February 18, 2025, Plaintiff responded and asserted, without substantive explanation, that only one of the five payments—$9,700 under Invoice No. DT22111601—qualified as made in the ordinary course of business. Plaintiff therefore reduced the demanded amount to $265,365.72 and proposed to resolve the matter at 75% of the revised demand, offering to settle for $199,024.29 to avoid litigation expenses. (See Exhibit 9).

4

18. On February 21, 2025, Defendant rejected the proposed settlement. Because Plaintiff had not articulated any factual or legal basis demonstrating that the transactions were outside the ordinary course of business, Defendant did not agree that the Transfer was recoverable and therefore did not agree to Plaintiff's proposed settlement. (See Exhibit 10).

19. In summary, the Transfer at issue was the result of ordinary commercial transactions and routine reconciliation of invoices and credit adjustments, and was fully consistent with the parties' longstanding course of dealing, including their historical payment practices. Notwithstanding Defendant's detailed documentation and explanation, Plaintiff continued to assert its recovery demand without identifying any deviation from those established practices and ultimately initiated this action.

## II. RESPONSE TO CLAIMS FOR RELIEF

### COUNT I

20. Defendant incorporates its responses to prior paragraphs as if fully set forth herein.

21. Defendant denies that the Transfers are avoidable under 11 U.S.C. § 547(b).

22. Defendant admits that it received payments totaling approximately the Transfer during the Preference Period but denies that such payments constitute avoidable transfers.

23. Defendant admits that it supplied goods to the Debtors and was a creditor at relevant times but denies that such status renders the Transfers avoidable.

24. Defendant admits that the Transfers reduced amounts owed but denies that such reduction constitutes an avoidable preference.

25. Defendant admits that the payments within the Transfer related to amounts previously invoiced but denies that the Transfers are avoidable under 11 U.S.C. §547(b).

26. Defendant admits that correspondence occurred but denies any characterization inconsistent with the ordinary course of business and denies any implication of avoidance.

## COUNT II

27. Defendant incorporates prior responses as if fully set forth herein.

28. Defendant denies that the Transfers constitute fraudulent transfers under 11 U.S.C. §548(a)(1)(B).

29. Defendant denies that the Transfers are avoidable as constructive fraudulent transfers.

30. Defendant specifically denies:

(a) that the Debtors received less than reasonably equivalent value;

(b) that any element of constructive fraudulent transfer has been satisfied;

(c) that Plaintiff is entitled to relief under §548.

## COUNT III

31. Defendant incorporates prior responses as if fully set forth herein.

32. Defendant denies that Plaintiff is entitled to avoid the Transfers under §§547 or 548.

33. Defendant denies that Plaintiff is entitled to recover the Transfers under §550.

## COUNT IV

34. Defendant incorporates prior responses as if fully set forth herein.

35. Defendant denies that it is a transferee of avoidable Transfers.

36. Defendant denies that it is liable under §550.

37. Defendant denies that any claim of Defendant should be disallowed under §502(d) or (j).

### III. Affirmative Defenses

### A. Ordinary Course of Business – 11 U.S.C. § 547(c)(2)

38. The Transfer was made in payment of debts incurred by Debtor in the ordinary course of business or financial affairs of both the Debtor and Defendant.

6

39. The transactions were fully documented through written purchase orders, corresponding invoices, packing lists, bills of lading, and bank remittance records. (See Exhibit 2.)

40. During the fifteen (15) months preceding the Petition Date of February 23, 2023, the Debtors placed ten (10) purchase orders with Defendant. (See Exhibit 1.)

41. Five of those purchase orders—PO 222547, 225009, 225021, 223128, and 223129—were placed during the ninety (90) days preceding the Petition Date.

42. In connection with those purchase orders, Defendant issued three invoices—DT22071201, DT22111601, and DT22112301—totaling $309,950.00. (See Exhibit 2.)

43. Additionally, Defendant issued Credit Note No. CN-22001 in the amount of $34,884.28 for the return of 857.371 kilograms of Lidocaine Base, which was applied against the outstanding invoice balance.

44. The Debtor's payments during the Preference Period were made pursuant to the parties' agreed payment terms of T/T thirty (30) days after receipt of goods. Historically, however, the Debtor had frequently made payments beyond the stated thirty (30)-day term, including payments more than sixty (60) days past due and others approximately seventeen (17) days past due[1]. Payments associated with the alleged Transfer followed the same pattern: Invoice No. DT22112301 was paid nine (9) days past due, and Invoices Nos. DT22071201 and DT22111601 were paid more than sixty (60) days past due. These payment timings are consistent with the parties' established course of dealing, and the preference-period payments fall squarely within the historical range of payment delays between Delta and Akorn and are therefore consistent with the parties' established course of dealing.

45. No extraordinary collection efforts, threats, litigation demands, changes

---

[1] e.g. Previous payments were also belated; payment received on 4/1/2022 associated with invoices DT21102601 and DT21121101 were over 70 days past due and payment received on 6/24/2022 associated with invoice DT22031601 was 17 days past due.

in payment terms, or other atypical conduct occurred in connection with the Transfer. Defendant continued to conduct business with the Debtor in good faith up until shortly before the Petition Date, further demonstrating the ordinary and customary nature of the transactions.

46. Accordingly, the Transfer was:

(a) made in the ordinary course of business or financial affairs of the Debtor and Defendant; and/or

(b) made according to ordinary business terms within the relevant industry.

47. Pursuant to 11 U.S.C. § 547(c)(2), the Transfer is not avoidable as a preferential transfer, and Plaintiff is barred from recovering the same.

## B. Reasonably Equivalent Value – 11 U.S.C. § 548(a)(1)(B)

48. The Debtor received reasonably equivalent value in exchange for the Transfer.

49. As stated above, each Transfer was made in payment of goods actually ordered, shipped, delivered, and accepted by the Debtors in the ordinary course of business.

50. The products ordered, quantities purchased, and unit pricing of those five purchase orders were materially consistent with the Debtors' prior orders placed outside the Preference Period.

51. There were no deviations in pricing structure, no unusual discounts, no inflated charges, no changes in product type, and no alterations in commercial terms.

52. The Transfers therefore represented the net reconciliation of valid commercial invoices and credit adjustments for goods supplied.

53. The Debtors received the full benefit of the goods purchased at fair market pricing consistent with prior transactions.

54. Accordingly, the Debtors received reasonably equivalent value in exchange for the alleged Transfers as a matter of law, and the Transfers did not diminish the Debtors' estates beyond the dollar-for-dollar reduction of valid antecedent liabilities. The Transfer was paid in

8

exchange for goods of equivalent value and therefore does not meet the requirements of § 548(a)(1)(B).

### Good Faith Defense – 11 U.S.C. § 548(c)

55. Even assuming arguendo that the Transfer were deemed avoidable, Defendant received the Transfer in good faith and for value.

56. Defendant had no knowledge of any alleged insolvency, fraudulent scheme, or intent to hinder creditors.

57. Defendant continued to conduct business in good faith up until shortly before the Petition Date.

58. Pursuant to 11 U.S.C. § 548(c), Defendant is entitled to retain the Transfer to the extent value was provided.

WHEREFORE

Defendant respectfully requests that Plaintiff's claims under 11 U.S.C. §§ 547 and 548 be dismissed with prejudice, that judgment be entered in favor of Defendant, and that the Court grant such other and further relief as it deems just and proper.

Dated: March 13, 2026

DELTA SYNTHETIC CO., LTD

By: _____

Name: LIU, ZENG-XIONG

Title: Legal Representative

Address: No. 15, Minsheng St., Tucheng District, New Taipei City, 23679 Taiwan

Email: [jay.liu@deltas.com.tw]

Telephone: [+886-2-22686357]

## Index of Exhibits

**Exhibit 1**

Transaction Summary Between Akorn and Delta (November 2021 – February 2023)

**Exhibit 2**

Purchase Orders, Invoices, and Shipping Documents Relating to Transactions Between Akorn and Delta.

**Exhibit 3**

Credit Note No. CN-22001

Return of Lidocaine Base

**Exhibit 4**

Historical Payment Records -- Demonstrating Prior Late Payment History

**Exhibit 5**

Email Correspondence Between Akorn and Delta (January 18 – February 13, 2023)

**Exhibit 6**

Trustee Demand Letter (Dated December 17, 2024)

**Exhibit 7**

Response from Counsel for Delta (Dated January 24, 2025)

**Exhibit 8**

Detailed Written Response from Delta With Supporting Documentation (Dated February 14, 2025)

**Exhibit 9**

Settlement Proposal from Plaintiff (Dated February 18, 2025)

**Exhibit 10**

Delta's Rejection of Settlement Proposal (Dated February 21, 2025)